IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| LESLIE PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-477 (LMB/JFA) |
| | ) | |
| JOHN HAWSE and DENISE LAWHORN, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

On June 30, 2015, after the parties argued the Defendants' Motion to Dismiss the Amended Complaint ("Motion to Dismiss"), the motion was granted in part, with all claims against John Hawse dismissed. The remaining issue as to whether Denise Lawhorn was immune from suit was taken under advisement. See Order of June 30, 2015 [Dkt. No. 26].

Plaintiff Leslie Patterson ("Patterson"), the pastor of First Baptist Church of Sterling (the "Church"), brought this action for damages against two agents of the Virginia Department of Taxation, Denise Lawhorn ("Lawhorn") and John Hawse ("Hawse"), solely in their individual capacities, raising claims under state law of malicious prosecution and under 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment "right not [to] be arrested or subjected to criminal prosecution without probable cause." E.g., Am. Compl. ¶ 52. The Amended Complaint contains the following allegations in support of these claims.

Patterson and his wife were first arrested on October 27, 2011, based on felony warrants charging embezzlement, filing false personal tax returns, and receiving money under false pretenses. The embezzlement charges were dismissed for lack of evidence on February 27, 2012. Id. ¶ 26. The Commonwealth subsequently dropped all remaining charges against Patterson on June 19, 2012, after neither his original personal tax returns nor the amended

returns that he agreed to submit "provided any cause to believe that [he] had engaged in any *criminal* conduct." Id. ¶ 29.

On June 29, 2012, Patterson was again arrested, on warrants sworn out by Lawhorn this time for misdemeanor charges of failing to file and pay the Church's withholding taxes for 2009 and 2010. Id. ¶¶ 31-32. Patterson alleges that Lawhorn "sought the misdemeanor warrants despite the fact that the taxes in question were paid and the [C]hurch's VA-5 and VA-6 tax return forms were filed months prior to the Department of Taxation filing these misdemeanor charges." Id. ¶ 36. All the misdemeanor charges were nolle prossed on October 24, 2012, allegedly "when the Commonwealth's Attorney could produce no evidence" to support them. Id. ¶ 38.

Finally, Patterson alleges that on October 10, 2012, at the behest of Lawhorn "the Department of Taxation assessed fraud penalties for [the Church's] quarterly returns Q1 2008 through Q1 2011" without explanation. Id. ¶ 40. On December 13, 2012, the Department of Taxation placed a lien on the Church's property, which was lifted after the Church's counsel intervened. Id. ¶ 41. The fraud penalties against the Church and Patterson were ultimately abated on July 3, 2014, following the Department of Taxation's conclusion that "doubtful liability exists in this case." Id. ¶ 42.

Patterson alleges that all of these prosecutions were malicious, without probable cause, and taken under color of state law. Id. ¶¶ 45-46. Specifically, he alleges that the warrants "were so lacking in any indicia of probable cause that any reasonably well-trained agent would have known that they failed to demonstrate probable cause." Id. ¶ 47. Patterson also alleges that the warrants were based on explicit or implicit material misrepresentations and omissions, in that Lawhorn knew that Patterson was not the person responsible for the Church's withholding taxes on the dates listed in the misdemeanor warrants. See id. ¶¶ 33, 47, Exs. 1-13.

2

In the defendants' Motion to Dismiss, they argued that although the Amended Complaint *states that* Patterson is suing defendants in their individual capacity, "[t]he Amended Complaint's intention [is] to sue [them] in their official capacity." Defs.' Br. Supp. Mot. Dismiss ("Defs.' Br.") 5 (June 19, 2015); therefore, the Eleventh Amendment bars this action for damages. See id. 5-8.

The Eleventh Amendment provides, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "The Eleventh Amendment grants a State immunity from suit in federal court . . . by its own citizens as well." Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 616 (2002) (citing Hans v. Louisiana, 134 U.S. 1 (1890)).[1] More specifically, the Eleventh Amendment has been construed to bar damages actions in federal court against a State or its officials in their official capacity, "absent waiver by the State or valid congressional override." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (footnote and citation omitted).

Plaintiff first responds that defendants waived any claim of Eleventh Amendment immunity by removing this action to federal court. See Opp'n Mot. Dismiss ("Pl.'s Opp'n") 2

---

[1] Although the Eleventh Amendment does not expressly apply to suits against a state brought by that state's own citizens, "the bare text of the Amendment is not an exhaustive description of the States' constitutional immunity from suit." Alden v. Maine, 527 U.S. 706, 736 (1999). As the Supreme Court explained in Alden:
> We have . . . sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments.

Alden, 527 U.S. at 713.

(citing Lapides, 535 U.S. 613; Byrge v. Va. State Univ. Bd. of Visitors, No. 3:13-CV-031-HEH, 2013 WL 2490183 (E.D. Va. June 10, 2013)). Although Lapides held that a State's removal of a lawsuit to federal court waived its Eleventh Amendment immunity, defendants correctly pointed out during oral argument that the Lapides holding was expressly limited to "the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." Lapides, 535 U.S. at 617. In contrast, defendants emphasized the Fourth Circuit's decision in Stewart v. North Carolina, 393 F.3d 484 (4th Cir. 2005), in which the court held that the defendant State, "having not already consented to suit in its own courts, did not waive sovereign immunity by voluntarily removing the action to federal court for resolution of the immunity question." Id. at 490. Plaintiff countered that Stewart is not dispositive because that court expressly declined to make an Eleventh Amendment determination. See id. at 490 n.5.[2]

Ultimately, the waiver question need not be decided if the Court finds that the defendants are not entitled to either state sovereign immunity or Eleventh Amendment immunity because the defendants cannot waive an immunity that they never possessed. "[W]hen [a] suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." Martin v. Wood, 772 F.3d 192, 195 (4th Cir. 2014) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984)). Resolution of this issue requires a court to determine who is the "real, substantial party in interest." Id. at 196 (quoting Pennhurst, 465 U.S. at 101). If the defendant state officials are "merely the nominal defendants and the state is the

---

[2] Specifically, the court stated:
> To be precise, by "sovereign immunity" we are referring to the longstanding principle of state sovereign immunity implicit in constitutional order, not the more narrow principle of Eleventh Amendment immunity. As the issue is not presented by this case, we express no opinion as to the effect, if any, of voluntary removal on the availability of Eleventh Amendment immunity where the State has not already consented to suit in its own courts.

Stewart, 393 F.3d at 490 n.5 (citation omitted).

real, substantial party in interest," then "Eleventh Amendment immunity also extends to [those] state officials." Booth v. Maryland, 112 F.3d 139, 142 (4th Cir. 1997) (internal quotation marks omitted). In contrast, "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." Hafer v. Melo, 502 U.S. 21, 30-31 (1991). In other words, "the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law," id. at 30 (quoting Scheuer v. Rhodes, 416 U.S. 232, 237 (1974)), "nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts," id. at 31.

The Supreme Court has elaborated on how to differentiate between official-capacity suits, in which Eleventh Amendment immunity may be available, and individual-capacity suits, in which only personal immunity defenses may be available, particularly in the context of § 1983 claims:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.
>
> On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law.

5

Kentucky v. Graham, 473 U.S. at 165-66 (citations, footnote, and internal quotation marks omitted) (emphases in original). In addition, the Fourth Circuit has indicated that a court may not rely solely on a complaint naming a state official in his or her individual capacity but instead should "examine the substance of the claims." Martin, 772 F.3d at 195-96 (emphasis in original). The Martin court articulated other factors relevant to this analysis:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions ultra vires.

Id. at 196 (citations and internal quotation marks omitted) (emphasis in original); see also Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995).[3]

Under the Graham and Martin framework, at this pleading stage, Patterson's § 1983 claims appear to be brought against Lawhorn in her individual capacity based on her alleged personal deprivation of his Fourth Amendment rights under color of state law. Focusing on the inadequacy of the warrants that Lawhorn obtained, Patterson has plausibly alleged that Lawhorn repeatedly and intentionally sought to have him arrested and prosecuted without probable cause

---

[3] In Biggs, the Fourth Circuit considered similar factors in a § 1983 complaint to which the defendant state officials claimed Eleventh Amendment immunity:
> [W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity. One factor indicating that suit has been filed in such a manner might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint. Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits. . . . Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.

Biggs, 66 F.3d at 61.

6

to believe he had violated the statutes under which he was charged. Patterson does not claim that Lawhorn was acting in accordance with a policy or custom of the Department of Taxation to institute criminal proceedings against taxpayers without probable cause. Instead, he is claiming that Lawhorn's actions were <u>ultra</u> <u>vires</u> in that she exceeded her legal authority by carrying out this pattern of persecuting him.

Moreover, Patterson seeks relief against Lawhorn's personal assets. On this point, defendant contends that the "Commonwealth pays final judgments awarded against State employees acting within the scope of their employment" and that, therefore, "a judgment would be institutional and official in character such that it would operate against the state." Defs.' Br. 7. This argument is unpersuasive. Defendant represented at oral argument that there is a statute to this effect but did not identify that statute or any other authority for this payment obligation. From defendant's oral description of the statute, it does not appear to guarantee that the Commonwealth would satisfy any judgment against her in this action; rather, the Commonwealth would first need to determine whether she was acting within the scope of her employment at the time of the alleged misconduct. Such a determination would likely turn at least in part on facts that have not yet been developed in this litigation. In addition, Patterson is not "seeking to impose a liability which must be paid from public funds in the state treasury." <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974). That the Commonwealth may voluntarily choose to satisfy a personal judgment against Lawhorn does not equate to Patterson seeking to impose a liability that "must" be paid by the Commonwealth. Indeed, the Commonwealth is free to repeal the statute to which defendant refers at any time. For all these reasons, the allegations in the Amended Complaint are sufficient to find that Lawhorn is being sued in her individual capacity and, therefore, she is not entitled to Eleventh Amendment immunity on Patterson's § 1983 claims.

Whether Lawhorn may claim Eleventh Amendment immunity from Patterson's state law claims follows the same analysis. Because the Martin factors weigh in favor of finding that Lawhorn, not the Commonwealth, is the real party in interest in this lawsuit, Lawhorn is not entitled to absolute immunity from any of the claims in the Amended Complaint.[4]

Although Lawhorn may not claim absolute immunity under the Eleventh Amendment, she may be entitled to qualified immunity for the § 1983 claims. "A government official is entitled to qualified immunity from civil damages for performing discretionary functions when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The proper qualified immunity analysis is parsed into two inquiries, which . . . may be assessed in either sequence. The first inquiry is: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" Merchant v. Bauer, 677 F.3d 656, 661-62 (4th Cir. 2012) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). The second inquiry is whether the constitutional right violated "was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in

---

[4] Despite defendants' oral contentions to the contrary, it does not appear that they would have been entitled to sovereign immunity had this action proceeded in state court because plaintiff has alleged an intentional tort, malicious prosecution. See Agyman v. Pierce, 26 Va. Cir. 140, 1991 WL 835356, at *1 (1991) ("It is well-settled in Virginia that governmental employees are not entitled to sovereign immunity for intentional torts. This is true whether they act within or without the scope of their authority." (citing Fox v. Deese, 362 S.E.2d 699, 705-06 (Va. 1987); Elder v. Holland, 155 S.E.2d 369, 372-73 (Va. 1967)); see also Cunningham v. Rossman, 80 Va. Cir. 543, 2010 WL 7373694, at *4 (2010) ("While the Commonwealth, its political subdivisions, and high-level governmental officials have absolute immunity unless it is waived, other government employees and officials have qualified immunity depending on the function they perform and the manner of performance. Government employees are not entitled to immunity when they engage in gross or willful and wanton negligence, and neither are they entitled to immunity when they act beyond the scope of their employment, exceeding their authority and discretion. Therefore, government employees are, at most, entitled to the protection of sovereign immunity for acts of simple negligence.").

which he allegedly engaged was unlawful in the situation he confronted." Id. at 662 (internal quotation marks omitted). "In order for a plaintiff's claim to withstand the qualified immunity defense, both of the Saucier inquiries must be answered in the plaintiff's favor." Id. at 661.

Here, Patterson alleges that Lawhorn violated his Fourth Amendment rights "not [to] be arrested or subjected to criminal prosecution without probable cause." E.g., Am. Compl. ¶ 52. "Unquestionably, [t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007) (internal quotation marks omitted). "A plaintiff's allegations that police seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment." Id. (internal quotation marks omitted). "[P]robable cause has been shown when the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." McAfee v. Boczar, 738 F.3d 81, 87 (4th Cir. 2013), as amended (Jan. 23, 2014) (internal quotation marks omitted)). For an officer whose request for a warrant allegedly caused an unconstitutional arrest, the "shield" of qualified immunity will be lost if "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 344-45 (1986) (citation omitted).

Lawhorn argues that Patterson's constitutional rights were not violated because there was probable cause for all of the warrants. Although Lawhorn may be entitled to qualified immunity on this basis at a later stage in the proceedings, the Court must accept Patterson's well pleaded allegations as true at the motion to dismiss stage. Patterson alleges that he was not the person

9

responsible for the Church's missed or misstated filings in 2009 and 2010 and that Lawhorn knew of this fact. Am. Compl. ¶¶ 12, 33. He further alleges that "the taxes in question were paid and the [C]hurch's VA-5 and VA-6 tax return forms were filed months prior to the Department of Taxation filing these misdemeanor charges." Id. ¶ 36. These allegations, coupled with the warrants themselves—which provide no facts in support of probable cause—and the fact that all of the felony and misdemeanor charges were terminated in Patterson's favor are sufficient to plausibly state a claim for unreasonable seizure under the Fourth Amendment.

## CONCLUSION

For all these reasons, Lawhorn is not entitled to either Eleventh Amendment or qualified immunity. Accordingly, an Order denying the Motion to Dismiss as to Lawhorn will issue with this Memorandum Opinion.

Entered this 6th day of July, 2015.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge