IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| LESLIE PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-cv-477 (LMB/JFA) |
| | ) | |
| DENISE LAWHORN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is Denise Lawhorn's ("defendant" or "Lawhorn") Motion for Summary Judgment [Dkt. No. 82], Dec. 14, 2015. Plaintiff Leslie Patterson ("plaintiff" or "Patterson"), the African-American pastor of the First Baptist Church of Sterling ("FBCS" or the "church") initially filed this civil action on October 23, 2014 pro se in the Prince William Circuit Court against two agents of the Virginia Department of Taxation, Lawhorn and John Hawse ("Hawse"), in their individual capacities based on allegations that they had violated his Fourth Amendment "right not [to] be arrested or subjected to criminal prosecution without probable cause" and the Virginia malicious prosecution statute. Second Am. Compl. ¶ 52 [Dkt. No. 30], Jun. 8, 2015.

On April 10, 2015, Lawhorn and Hawse filed a Joint Notice of Removal [Dkt. No. 1], which resulted in plaintiff's Complaint being removed to this court, and on April 17, 2015 they filed a motion to dismiss. See Defs.' Joint Mot. to Dismiss [Dkt. No. 3], Apr. 17, 2014. On May 8, 2015, Patterson retained counsel, see Notice of Appearance [Dkt. No. 12], and on June 5, 2015, he filed his first Amended Complaint [Dkt. No. 20]. Defendants filed a revised motion to dismiss on June 19, 2015, see Defs.' Mot. to Dismiss [Dkt. No. 21], Jun. 19, 2016, which the

Court granted in part on June 30, 2015, dismissing all claims against Hawse. Order [Dkt. No. 26], Jun. 30, 2015.

Patterson filed a Second Amended Complaint [Dkt. No. 30] on July 9, 2015, consisting of thirteen counts alleging violations of the Virginia malicious prosecution statute and thirteen counts alleging violations of 42 U.S.C. § 1983 against Lawhorn alone. Specifically, plaintiff alleges that the six felony warrants and seven misdemeanor warrants for which Lawhorn was the complainant, all of which resulted in his arrest, were not based on probable cause and that Lawhorn is liable to him for violating his Fourth Amendment right to be free of unlawful seizure and his right under Virginia law not to be subject to malicious prosecution. In particular, Patterson alleges that both the felony and misdemeanor complaints supporting the warrants at issue contain bare recitations of the elements of each statute and do not contain any written factual support for their legal conclusions. Plaintiff seeks compensatory and punitive damages as well as attorneys' fees and costs. Second Am. Compl. 21-22.

In her motion for summary judgment, Lawhorn argues that plaintiff's § 1983 claims are barred by Eleventh Amendment Sovereign Immunity and that she is entitled to qualified immunity as to the claims under § 1983. In addition, Lawhorn argues that there is insufficient evidence in this record to support any of plaintiff's claims. For the reasons discussed below, defendant's motion for summary judgment will be granted.

I.   FACTUAL BACKGROUND

The investigation into plaintiff's tax and financial activities was started by the Virginia Department of Taxation after it received a referral from the Loudoun County Sheriff's Department and the United States Secret Service. Def.'s Mem. in Supp of Mot. for Summ. J. 3 [Dkt. No. 83], Dec. 14, 2015 ("Def.'s Mem."); Def.'s, Notice of Sub. of Exs. For Mem. in Supp.

of Mot. for Summ. J., Ex. 1, at 2; Ex. 3, ¶ 6 [Dkt. No. 84], Dec. 14, 2015 [hereinafter "Def.'s

Ex."].[1] These agencies had been alerted to Patterson's suspicious financial and tax activities by

former members of his church. Def.'s Mot. to Strike and Rebuttal Br. in Supp. of Mot. for

Summ. J. 2 [Dkt. No. 92], Jan. 19, 2016 ("Def.'s Rebuttal"); Pl.'s Mem. in Opp'n to Def.'s Mot.

for Summ. J. 1 [Dkt. No. 90], Jan. 12, 2016 ("Pl.'s Opp'n"). Lawhorn was one of the Virginia

Department of Taxation's criminal investigators assigned to investigate the allegations about

Patterson's activities. Def.'s Ex. 3 (McGarvey Decl.), ¶¶ 5, 8. In her role as a criminal

investigator, Lawhorn was authorized to perform independent investigations of suspected

violations of the Commonwealth's tax laws and related offenses. Def.'s Ex. 2, at 1. Once she

completed an investigation, she was required to present her findings and conclusions to

supervisors within her department for their review; then, if they approved filing criminal charges,

to obtain further review and approval from the appropriate prosecutorial entities. Pl.'s Opp'n, Ex.

C (Lawhorn Dep.), at 111:12-15 [hereinafter "Pl.'s Ex."]. Because Lawhorn was not a law

enforcement officer, she could not apply for felony warrants without a prosecutor's approval.

Def.'s Ex. 2, at 1; Va. Code Ann. § 9.1-101 (2014). Although Lawhorn was not legally required

to obtain a prosecutor's signature in advance of applying for misdemeanor warrants, the record

shows that before obtaining the misdemeanor warrants at issue she first obtained her supervisor's

---

[1] As an initial matter, the Court considers as undisputed all of defendant's proposed undisputed facts to which plaintiff has merely provided a denial, without citing to the record. Under Fed. R. Civ. P. 56(c), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." If a party fails to properly support a factual dispute, a court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). In addition, "[t]he facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." Anglinmatumona v. Micron Corp., No. 1:11-CV-572 AJT/TRJ, 2012 WL 1999489, at *4 (E.D. Va. June 4, 2012).

approval of her findings and then discussed the misdemeanor charges with a prosecutor. Pl.'s Ex.

G (Arledge Dep.), Exs. 8, 9. Lawhorn understood that she received the prosecutor's approval to

apply for the misdemeanor warrants. Def.'s Ex. 44 (Lawhorn Dep.), at 111:4-15.

### A. Felony Charges

It is undisputed that when Patterson filed his individual federal and Virginia income tax

returns for 2007, 2008, 2009, and 2010, the returns misrepresented his income. As discussed in

Lawhorn's prosecution report and confirmed when Patterson filed amended returns several

months after being arrested on the felony charges, he inaccurately reported his income for all

four years. Def.'s Exs. 1, 11. Patterson's returns also took credit for deposits of employee

withholding taxes that in fact had not been deposited with the Commonwealth. Def.'s Exs. 12,

13, 14, 15, 16, 17.

As part of her investigation, Lawhorn assembled numerous financial records and

summarized her findings in a prosecution package in which she recommended that Patterson be

prosecuted for violations of Va. Code Ann. §§ 58.1-348 and 18.2-178 for the 2007, 2008, 2009,

and 2010 tax years.[2] Def.'s Ex. 1. According to the declaration of Lawhorn's supervisor, Rhonda

McGarvey, she reviewed Lawhorn's completed report, approved the recommendation to file

felony charges against Patterson, and directed Lawhorn to contact the Office of the

Commonwealth's Attorney to obtain final approval. McGarvey Decl. ¶ 11.

Following McGarvey's directions, Lawhorn contacted Assistant Commonwealth's

Attorney John Arledge ("Arledge"), and, according to Arledge's rough daily logs, met with him

---

[2] Although plaintiff argues that the prosecution package was fluid and that defendant's Exhibit 1 is merely one among several iterations, there is no evidence in the record suggesting that the recommendations regarding prosecution of Patterson or the key facts supporting those recommendations materially shifted across versions. Pl.'s Opp'n 4.

4

for at least twelve minutes on October 25, 2011. Def.'s Ex. 19 (Arledge Dep.), 25:2-4; 65:23-66:3. At the conclusion of the meeting, Arledge signed the six criminal complaints, each of which included a statement that he had given "[a]uthorization prior to issuance of [the] felony arrest warrant." Second Am. Compl., Exs. 1-6, at 4. By signing the complaints, Arledge authorized Lawhorn to swear out two criminal complaints for Patterson's alleged violations of Va. Code Ann. § 18.2-178 for the tax years of 2007 and 2008 and four criminal complaints for Patterson's alleged violations of Va. Code Ann. § 58.1-348 for the tax years of 2007 through 2010. Id. Lawhorn then appeared before state magistrate Gary L. Talbot on October 25, 2011, and signed each of the criminal complaints "[u]nder penalty of perjury . . . [and] sw[o]re or affirm[ed] that [Lawhorn] ha[d] reason to believe that the Accused committed a criminal offense[,]" and that "[t]he statements [made therein] [were] true and accurate to the best of [her] knowledge and belief." Id. Although none of the complaints included a specific description of the facts supporting probable cause, in her supplemental declaration in this litigation, Lawhorn explained that she presented her felony prosecution package and supporting evidence to magistrate Talbot and answered his questions under oath. Def.'s Rebuttal Ex. R5 (Lawhorn Decl.), ¶ 11.[3] Magistrate Talbot issued the six felony arrest warrants, Second Am Compl., Exs.

---

[3] Plaintiff argues that the evidence implicitly reveals that Lawhorn was never sworn and did not present her prosecution report when she obtained the felony warrants because although Lawhorn's interrogatory answer regarding how she obtained the misdemeanor warrants explicitly mentions that the magistrate swore her in under oath and that she presented him with her prosecution report, her interrogatory answer describing how she obtained the felony warrants failed to include those facts. Pl.'s Opp'n 18 (citing Pl.'s Ex. H, at 5). In her subsequent sworn declaration, Lawhorn avers that she was placed under oath and answered all of the magistrate's questions about the evidence supporting the issuance of the felony warrants. Def.'s Rebuttal, Ex. R5 (Lawhorn Decl.), ¶¶ 11, 12. Plaintiff challenges this declaration, claiming that it contradicts Lawhorn's previous testimony in which she said, "I answered all questions and did not conceal or misrepresent facts." Pl.'s Resp. to May 4 Order 6 [Dkt. No. 103], May 18, 2016 ("Pl.'s Resp.") (quoting Pl.'s Ex. H, at 5). The Court rejects this contention and credits the contents of

1-6, and Officer J.T. Callahan executed the warrants and arrested Patterson on October 27, 2011.
Id.

Defendant contends and plaintiff disputes that the charges were ultimately nolle prossed
as a result of a settlement agreement. Although the record shows that plaintiff's counsel and
Assistant Commonwealth's Attorneys communicated during the ten months following
Patterson's arrest, the content of those communications is not in the record; however, what is in
the record is Arledge's sworn testimony, in which he alludes to reaching an informal agreement
with Patterson that the felony charges would be dismissed if Patterson filed amended tax returns
and paid any back taxes. Def.'s Rebuttal, Ex. R7 (Arledge Dep.), at 86:22-25 ("I know we made
plea offers that had been rejected. I thought there was something at some point if they'll of [sic]
file filings or pay the taxes, that the charges will be dismissed."). On May 21 and 24, 2012,
plaintiff filed amended tax returns for 2007 through 2010, and on June 19, 2012, the
Commonwealth's Attorney nolle prossed all of the pending felony charges. Def.'s Ex. 22. The
sequence of these events is consistent with defendant's assertion that the felony charges were
resolved pursuant to a compromise. Arledge Dep. 56:2-6. Moreover, in a June 22, 2012 email to
Arledge, Patterson's attorney described the history of the relevant felony charges by stating that
they were nolle prossed "when we agreed that while he made mistakes on his tax returns, he did
not take any money." Def.'s Rebuttal, Ex. R8.[4]

---

Lawhorn's declaration, which merely supplemented, and did not contradict, her previous sworn
statement by providing facts that were apparently inadvertently omitted.

[4] Although the amended returns did not result in plaintiff owing additional taxes to Virginia and
actually resulted in a $1,669 rebate for his 2007 return, they did expose him to a federal tax
liability of $45,743. See Def.'s Ex. 11 (2007: $12,129 owed); Def's Ex. 13 (2008: $20,460
owed); Def.'s Ex. 15 (2009: $6,246 owed); Def.'s Ex. 17 (2010: $6,908 owed). According to the
record of Patterson's currently ongoing bankruptcy proceeding, this claim has not been paid as of

## B. Misdemeanor Charges

It is undisputed that although plaintiff's church employed staff throughout all quarters of

2008, 2009, and 2010, the church neither filed Virginia's quarterly withholding forms (VA-5

Forms) for its employees on or before the quarterly due dates during those years, nor did it

timely deposit any payments of those employees' withholding taxes. Def.'s Exs. 23-37. It is

further undisputed that Patterson was the only person authorized to deposit any withheld funds.[5]

Def.'s Exs. 4, 5.

It was not until September 20, 2011, after the Department of Taxation's investigation had

begun, Def.'s Ex. 1, at 21, that Patterson presented the overdue VA-5 Forms for tax years 2008

through 2010 to the Department of Taxation by giving them to Lawhorn and Hawse during an

interview—no deposits of withheld funds accompanied these forms. Def.'s Ex. 39. Along with

the forms was a letter plaintiff signed in which he acknowledged being responsible for the

church's withholding taxes. Lawhorn Dep. 72:5-11; 80:23-81:10; 82:18-83:1. Yet, it was not

until March 7, 2012, over five months after filing the late returns when Patterson started

depositing the overdue taxes.[6] Pl.'s Ex. G (Arledge Dep.), Exs. 8, 9. According to Lawhorn's

prosecution report, the amounts paid only covered the principal due and did not include any

payment of the outstanding penalties and interest due for each delinquent quarter. Def.'s Ex. 41,

at 4. Lawhorn's report is supported by the checks signed by Patterson, each of which show in

---

June 1, 2016. See United States' Mot. to Dismiss [Dkt. No. 180], In re Patterson, 1:14-BK-144469 (E.D. Va. Jun. 1, 2016).

[5] Patterson was the only individual listed on the church's Resolution and Agreement for Deposit Account and on its Signature Cards with the church's bank, BB&T Bank. Def.'s Exs. 4, 5.

[6] Between March 7, 2012 and June 16, 2012, plaintiff deposited six checks to the Department of Taxation that totaled $9,512.37, each with the legend "principal payment." Pl.'s Ex. E.

their legends that each payment was a "principal payment." Pl.'s Ex. E. Moreover, interest and

penalties aside, there is a discrepancy in the record about whether there were still outstanding

principal balances owing as of June 2012. See Def.'s Rebuttal, Ex. R15 (Notice of Delinquency

issued by the Department of Taxation on October 10, 2012 showing a total balance owing of

$957.82 for withholding taxes in 2009, including $607 of principal); compare Pl.'s Ex. G, Ex. 9

(containing a chart suggesting that all balances for 2009 and 2010 were paid as of June 14,

2012), with Def.'s Ex. 41, at 5 (containing a chart updated on August 27, 2012 suggesting that a

$607 balance remained owing for 2009 and 2010).

Around June 14, 2012, Lawhorn met with Arledge, who asked her about the status of the

delinquent withholding taxes. Lawhorn Dep. 28:1-19; 49:16-23. After Lawhorn explained that

there was still a balance outstanding, Arledge directed her to compile a prosecution package to

support charges against Patterson for FBCS' failure to account for and pay withholding taxes. Id.

Lawhorn assembled a prosecution package setting forth the findings of her investigation and

obtained her supervisor's approval to seek prosecution of Patterson. Lawhorn Decl. ¶¶ 7, 8.

Lawhorn then went to Arledge to discuss whether misdemeanor or felony charges should be filed

against Patterson for failing to timely file and pay withholding taxes. Def.'s Rebuttal, Ex. R13

(email from Lawhorn to Arledge referring to earlier conversations about FBCS' delinquent

withholding taxes and inquiring about whether to bring misdemeanor or felony charges against

Patterson). Pursuant to Department of Taxation policy, Arledge possessed the ultimate authority

to determine whether criminal charges should be filed and the nature of those charges. Lawhorn

Dep. 111:12-15. After reviewing Lawhorn's prosecution package, Arledge directed her to swear

out misdemeanor complaints for any quarters for the years 2009 and 2010 for which withholding

8

balances were due.[7] Def.'s Rebuttal, Ex. R5 (Lawhorn Decl.), ¶ 15; Arledge Dep. 25:2-13; Pl.'s

Ex. C (Lawhorn Dep.), at 38:10-24; 189:22-190:7; Def.'s Rebuttal, Ex. R9 (Lawhorn Dep.), at

179:5-10.

On June 27, 2012, Lawhorn appeared before magistrate Gary R. Wheelehan to swear out

seven misdemeanor complaints, one for each of the quarters at issue, specifically the second

through fourth quarters of 2009 and all four quarters of 2010. Def.'s Ex. 44 (Lawhorn Dep.), at

111:16-21. As she did with the felony complaints, Lawhorn signed each of the misdemeanor

complaints "[u]nder penalty of perjury . . . [and] sw[o]re or affirm[ed] that [she] ha[d] reason to

believe that the Accused committed a criminal offense[,]" and that "[t]he statements [made

therein] [were] true and accurate to the best of [her] knowledge and belief." Second Am. Compl.,

Exs. 7-13, at 3. In her deposition, Lawhorn explained that she presented her prosecution package,

which included the report and relevant evidence, to the magistrate in support of the criminal

complaints. Lawhorn Dep. 109:19-110:23. There is no evidence in the record that contradicts

that statement.

The misdemeanor warrants were not issued in compliance with an amendment to the

Rules of the Supreme Court of Virginia issued on December 22, 2011, and made effective as of

March 1, 2012. That amendment requires that all sworn statements of facts supporting probable

cause made by non-law enforcement officers (such as Lawhorn) be reduced to writing. Va. Sup.

Ct. R. 3A:3. Although there are no written attachments to the misdemeanor complaints,

magistrate Wheelehan signed all of them. Second Am. Compl., Exs. 7-13, at 2. There is no

evidence in the record that Lawhorn was aware of the amendment.

---

[7] The applicable statute of limitations for delinquent withholding quarters in 2008 and the first quarter of 2009 had already run. Def.'s Ex. 41, at 5.

Because Lawhorn was not a law enforcement officer, she did not have the authority to arrest Patterson. As a result, the warrants were given to Prince William County Police Officer A.P. Javid, who had the discretion to either arrest Patterson or to permit him to appear by summons. Id. (stating that execution by summons is permitted at officer's discretion). Javid made the decision to arrest Patterson, rather than to summon him to appear. Id.; Def.'s Mem. 2. There is no evidence in the record indicating that Lawhorn influenced Javid's decision. In the fall of 2012, Arledge's successor met with Lawhorn, who provided him with an update reflecting Patterson's recent payments toward FBCS' withholding arrearages. Upon learning that Patterson was making good on this debt, Arledge's successor voiced his intention to nolle pross the misdemeanor charges and leave the Department of Taxation to pursue the civil penalties due on the remaining balance. Lawhorn Dep. 54:12-24. On October 24, 2012, all of the misdemeanor charges were nolle prossed. Def.'s Mem. 2.

## II.   DISCUSSION

Lawhorn focuses much of her Motion for Summary Judgment on the Eleventh Amendment, arguing that it bars plaintiff's action for damages under § 1983. Def.'s Mem. 13. In addition, Lawhorn contends that the evidence is insufficient to support either the § 1983 or state malicious prosecution claims, and finally, that qualified immunity shields her from § 1983 liability because her actions did not violate Patterson's clearly established constitutional rights. Id. at 15, 21, 25.

### A.  **Standard of Review**

Summary judgment is merited where the record demonstrates that "there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the court must "resolve all factual disputes and any

competing, rational inferences in the light most favorable to the party opposing that motion," id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (internal quotation marks omitted)), all inferences drawn in the nonmovant's favor must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995).

Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient" to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Am. Arms Int'l v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009). Rather, a genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248, and any existing factual dispute must be both "material" and "genuine," such that it has the potential to "affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

### B. Eleventh Amendment Sovereign Immunity

Relying on the factors set down in Martin v. Wood, 772 F.3d 192, 195 (4th Cir. 2014), Lawhorn asserts that the Eleventh Amendment bars this action for damages because even though the complaint is pleaded against her in her individual capacity, it is effectively brought against the Commonwealth. Def.'s Mem. 13. In response, Patterson argues that the Court already rejected the Eleventh Amendment argument, which Lawhorn made in her Motion to Dismiss [Dkt. No. 27], and that Lawhorn's contentions do not merit reconsideration under Fed. R. Civ. P. 59(e). Pl.'s Opp'n 15. The Court finds that Eleventh Amendment sovereign immunity does not shield Lawhorn because the Martin factors are inapplicable to § 1983 claims.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall

11

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S.

Const. amend. XI. "The Eleventh Amendment grants a State immunity from suit in federal

court . . . by its own citizens as well." Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S.

613, 616 (2002) (citing Hans v. Louisiana, 134 U.S. 1 (1890)). More specifically, the Eleventh

Amendment has been construed to bar damages actions in federal court against a State or its

officials in their official capacity, "absent waiver by the State or valid congressional override."

Kentucky v. Graham, 473 U.S. 159, 169 (1985) (footnote and citation omitted).

Nevertheless, "the Eleventh Amendment does not erect a barrier against suits to impose

'individual and personal liability' on state officials under § 1983." Hafer v. Melo, 502 U.S. 21,

30-31 (1991). In other words, "the Eleventh Amendment provides no shield for a state official

confronted by a claim that he had deprived another of a federal right under the color of state

law," id. at 30 (quoting Scheuer v. Rhodes, 416 U.S. 232, 237 (1974)), "nor are state officers

absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature

of their acts." Id. at 31.

Defendant urges the Court to apply the factors set down by the Fourth Circuit in Martin, a

Fair Labor Standards Act case, to "examine the substance of the claims" and find that the true

party in interest is the Commonwealth and not Lawhorn, even though she is named in her

individual capacity. Martin, 772 F.3d at 195-96 (emphasis in original). The Martin factors, which

focus on the official character of the allegedly wrongful acts, are clearly inapplicable to § 1983

claims,[8] which "enforce provisions of the Fourteenth Amendment against those who carry a

---

[8] Two other district courts have reached this conclusion. See Dyer v. Maryland State Bd. of Educ., No. JKB-15-3699, 2016 WL 2939740, at *7 n.17 (D. Md. May 20, 2016); Buxton v.

badge of authority of a State and represent it in some capacity, whether they act in accordance

with their authority or misuse it." Monroe v. Pape, 365 U.S. 167, 172 (1961). Indeed, the Fourth

Circuit has never extended Martin to § 1983 claims, likely because it would "absolutely

immunize state officials from personal liability for acts within their authority and necessary to

fulfilling governmental responsibilities. Yet [Supreme Court precedent] do[es] not extend

absolute immunity to all officers who engage in necessary official acts." Hafer, 502 U.S. at 28.

Accordingly, Eleventh Amendment sovereign immunity does not shield Lawhorn against the

§ 1983 claims.[9]

## C. Sufficiency of the Evidence with Regard to State Malicious Prosecution Claims

Lawhorn argues that the evidence is insufficient to support any of Patterson's malicious

prosecution claims raised in Counts I, III, V, VII, IX, XI, XIII, XV, XVII, XIX, XXI, XXIII, and

XXV. Def.'s Mem. 21. Virginia public policy disfavors malicious prosecution claims;

accordingly, "the requirements for maintaining such actions are more stringent than those

applying to most other tort claims. The reason for this disfavor is that criminal prosecutions are

essential for the maintenance of an orderly society and people should not be discouraged from

---

Kurtinitis, No. CIV.A. ELH-14-2836, 2015 WL 3937930, at *6 (D. Md. June 25, 2015)
("[Plaintiff] correctly points out that Martin concerned the Fair Labor Standards Act, not 42
U.S.C. § 1983, and notes that the Supreme Court made clear in Hafer v. Melo, 502 U.S. 21, 31
(1991), that § 1983 plaintiffs can pursue claims against state officers in their individual
capacities for damages arising from official acts.").

[9] In any event, Lawhorn would not be entitled to immunity on the malicious prosecution counts
because they allege an intentional tort for which Virginia has waived sovereign immunity. See
Agyman v. Pierce, 26 Va. Cir. 140, 1991 WL 835356, at *1 (1991) ("It is well-settled in Virginia
that governmental employees are not entitled to sovereign immunity for intentional torts. This is
true whether they act within or without the scope of their authority." (citing Fox v. Deese, 362
S.E.2d 699, 705-06 (Va. 1987) (internal citation omitted))); Elder v. Holland, 155 S.E.2d 369,
372-73 (Va. 1967); see also Cunningham v. Rossman, 80 Va. Cir. 543, 2010 WL 7373694, at *4
(2010).

bringing such actions for fear of subsequent civil proceedings against them." <u>Lee v. Southland</u> <u>Corp.</u>, 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978). To establish a malicious prosecution claim under Virginia law, "the plaintiff has the burden of showing that the prosecution was malicious, instituted by or with the cooperation of the defendant, without probable cause, and terminated in a manner not unfavorable to the plaintiff." <u>Commissary Concepts Mgmt. Corp. v. Mziguir</u>, 267 Va. 586, 589, 594 S.E.2d 915, 917 (2004). Lawhorn asserts that the evidence fails to show that she acted with malice, that the prosecutions lacked probable cause, and that the prosecutions were resolved in a manner not unfavorable to Patterson. Def.'s Mem. 22. Plaintiff argues to the contrary.

   1. <u>Malice</u>

   To establish a malicious prosecution claim, Patterson must produce evidence that Lawhorn was "motivated by [] personal or generalized animus toward" him when she sought the felony and misdemeanor warrants. <u>Lewis v. Kei</u>, 281 Va. 715, 723-24, 708 S.E.2d 884, 890 (2011). Malice may be shown if a person acted with "any <u>controlling</u> motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." <u>Hudson v. Lanier</u>, 255 Va. 330, 333, 497 S.E.2d 471, 473 (1998) (emphasis in original); <u>see also</u> <u>Bill Edwards Oldsmobile, Inc. v. Carey</u>, 219 Va. 90, 100, 244 S.E.2d 767, 773 (1978). This determination "is based upon the defendant's entire course of conduct toward the plaintiff," rather than selected isolated incidents. <u>Pallas v. Zaharopoulos</u>, 219 Va. 751, 757, 250 S.E.2d 357, 361 (1979).

   There is no evidence in this record indicating that Lawhorn had any personal or generalized animus or bias towards plaintiff. For example, it is uncontested that Lawhorn did not initiate the investigation into Patterson's financial activities; rather, it was triggered by a referral

to the Virginia Department of Taxation from the United States Secret Service and Loudoun County investigators, who were themselves tipped off to possible financial criminal activities by former church members. Def.'s Ex. 1, at 2; McGarvey Decl. ¶ 6. Moreover, there is no evidence that Lawhorn had ever expressed any bias with regard to Patterson or his race. Arledge Dep. 82:16-23. Despite this evidence of lack of malice, Patterson argues that malice can be inferred from Lawhorn allegedly deviating from Department of Taxation policy; however, he fails to specify which policy was violated. Pl.'s Opp'n 26. He also argues that Lawhorn disobeyed instructions given to her by Arledge, who only authorized Lawhorn to seek misdemeanor warrants for any quarters with unpaid balances of withholding taxes. Id. Patterson relies on what he characterizes as inconsistencies between a chart Lawhorn emailed to Arledge on June 14, 2012 showing that FBCS had remitted the balances due for 2009 and 2010 withholding taxes, Pl.'s Ex. G, at 23, and her prosecution report, which included a chart showing delinquent balances as well as remarks that penalties and interest remained owing. Def.'s Ex. 41. Despite that conflict, it is absolutely clear that the payments plaintiff made in June 2012 only satisfied the principal of the overdue taxes at best and did not include any of the interest or penalties mandated by statute. Pl.'s Ex. E; see, e.g., Va. Code Ann. § 58.1-1619. Pursuant to the Virginia Code,

> [a]ny person who fails to pay the tax herein levied within the time required by this chapter shall pay, in addition to the tax a penalty of five percent of the amount of tax due. Six months from the date at which the tax herein levied became due and payable, interest shall be assessed upon the entire amount due in accordance with § 58.1-15. Such penalty and interest shall be assessed and collected as a part of the tax.

Va. Code Ann. § 58.1-1619 (emphasis added). According to Va. Code Ann. § 58.1-15, the current interest due on the unpaid balance is three percent. I.R.C. § 6621(2)(b).

Accordingly, although there is some dispute about whether the entire overdue principal

15

had been paid for the periods for which Lawhorn filed misdemeanor charges, Pl.'s Ex. H, at 5, Patterson clearly owed the interest and penalties for each quarter, and thus Lawhorn's actions conformed with Arledge's instructions to file charges only for quarters for which payment was not complete. Furthermore, there is no indication in the record that there was a formal Department of Taxation policy against filing criminal charges for late filed returns for which only interest and penalties were overdue. In addition, there is nothing in the record that refutes Lawhorn's supervisor's statement under penalty of perjury that Lawhorn "conducted her investigation in accordance with the Department of Taxation's protocol and procedures." McGarvey Decl. ¶ 15.

As such, nothing in Lawhorn's "entire course of conduct" indicates that she acted with malice in seeking Patterson's prosecution on either the felony or misdemeanor charges, and for that reason alone, Patterson's malicious prosecution claims fail.

2. Probable Cause

Lawhorn also contends that the evidence does not establish that she lacked probable cause to initiate either the felony or misdemeanor prosecutions. Def.'s Mem. 22. In Virginia, "[m]alice may be inferred from a lack of probable cause, but a lack of probable cause may not be inferred from malice." Reilly v. Shepherd, 273 Va. 728, 733, 643 S.E.2d 216, 219 (2007).

Probable cause in this context is defined as the defendant's "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Whether probable cause existed is determined as of the time when the action complained of was taken." Id. (internal quotation marks and citations omitted). The plaintiff bears the burden of establishing that the defendant lacked probable cause when she applied for the warrants at issue. Lewis v.

First Nat. Bank of Stuart, 645 F. Supp. 1499, 1503 (W.D. Va. 1986), aff'd, 818 F.2d 861 (4th Cir.

1987) (citing Niese v. Klos, 216 Va. 701, 704, 222 S.E.2d 798, 801 (1976)). Moreover, even if

the facts forming the basis of a defendant's belief that she had probable cause to initiate a

criminal prosecution are ultimately proven to have been inaccurate, a "defendant need only to

reasonably believe they were true at the time the proceeding was instituted." Caldwell v. Green,

451 F. Supp. 2d 811, 818 (W.D. Va. 2006).

   The facts and circumstances known to Lawhorn on October 25, 2011 and on June 27,

2012, the dates on which she swore out the felony and misdemeanor complaints, support the

conclusion that she had a reasonable basis upon which to seek prosecution of Patterson for

violating Virginia's tax laws.

   Counts I, III, V, and VII concern the felony warrants obtained for violations of Va. Code

Ann. § 58.1-348, which provides in pertinent part:

> any individual or fiduciary required under this chapter to make a return of income, . . .
> who, with intent to defraud the Commonwealth, makes any false statement in any such
> return, shall be guilty of a Class 6 felony.

Va. Code Ann. § 58.1-348. When these warrants were obtained, Lawhorn had enough evidence

to "excite the belief in [a] reasonable mind" that Patterson had violated the statute's prohibition

against filing false tax returns. Specifically, as reflected in her prosecution report,[10] a comparison

---

[10] Lawhorn admits that her prosecution reports were "fluid document[s]" that changed
throughout the course of the investigation. Lawhorn Dep. 38:1-3. Nevertheless, there has been no
evidence adduced to suggest that the findings and conclusions in these versions materially differ
from the versions of the reports Lawhorn showed to the magistrates when she obtained the
warrants. As such, for the purposes of its analysis, the Court finds that the contents of the
prosecution reports in the record provide a sufficient basis to determine whether Lawhorn
possessed probable cause when she obtained the warrants, as well as to determine what she
presented to the magistrates who made the probable cause determinations before issuing the
warrants.

of Patterson's reported income with several personal and church bank accounts reasonably

supported the conclusion that he was significantly misreporting his income for 2007, 2008, 2009,

and 2010. Def.'s Ex. 1, at 5-7. For example, for 2008, Lawhorn found an estimated deficiency of

$216,255 in Patterson's reported income when she added up the cash deposits in his accounts,

gifts from parishioners, payments from churches, and personal expenses paid through church

accounts. Id. at 6. Although the amended personal income tax returns Patterson eventually filed

after being arrested on the felony charges did not result in plaintiff owing any additional taxes to

Virginia and actually entitled him to a $1,669 rebate for 2007, his amended returns resulted in his

acknowledging that he owed $45,743 to federal tax authorities. See Def.'s Ex. 11 (2007: $12,129

owed); Def's Ex. 13 (2008: $20,460 owed); Def.'s Ex. 15 (2009: $6,246 owed); Def.'s Ex. 17

(2010: $6,908 owed). The facts confirm that Lawhorn had a reasonable basis to believe that there

was a pattern of Patterson misreporting income, that part of that pattern involved an abuse of tax

benefits provided to members of the clergy, and that plaintiff was improperly taking credit for

employee withholding amounts that had not been deposited with the Commonwealth when he

filed his personal income tax returns. Def.'s Ex. 1, at 2-4.

     That some of Lawhorn's findings are disputed by Patterson is immaterial because there is

no evidence in this record indicating that Lawhorn did not reasonably believe her findings to be

true at the time she swore out the criminal complaints against Patterson. Moreover, the

information in Lawhorn's prosecution report was reviewed by her supervisor, who approved

Lawhorn pursuing the felony charges, McGarvey Decl. ¶¶ 10-14, and the evidence satisfied

Arledge to authorize Lawhorn to file the criminal charges. Second Am. Compl., Exs. 1-6, at 4.

Lastly, it is uncontested that plaintiff's tax returns did, in fact, misrepresent his income.

Accordingly, Lawhorn had probable cause for the felony warrants referenced in Counts I, III, V,

and VII.

Counts IX and XI concern felony warrants that were obtained by Lawhorn for violations

of Va. Code Ann. § 18.2-178, which provides in pertinent part:

> [i]f any person obtain, by any false pretense or token, from any person, with intent to
> defraud, money, a gift certificate or other property that may be the subject of larceny, he
> shall be deemed guilty of larceny thereof.

Va. Code Ann. § 18.2-178(A). These warrants were based upon Patterson's 2007 and 2008 tax

returns, which, according to Lawhorn's prosecution report, originally resulted in tax refunds of

$3,092.71 and $4,103.00, respectively. Def.'s Ex. 1, at 5, 6. Lawhorn summarized her findings

based on her analysis of Patterson's and his wife's personal bank accounts, church accounts,

mortgage information, and insurance policies, explaining in her prosecution report that "because

income was underreported on their return, the Pattersons subsequently received a tax refund, to

include refund interest." Def.'s Ex. 1, at 5. These findings could reasonably support the belief

that Patterson had "obtain[ed], by [] false pretense or token, . . . with intent to defraud, money."

Patterson disputes the validity of Lawhorn's findings and highlights that after he filed his 2007

amended returns in May 2012, he was entitled to an even larger refund for 2007. Pl.'s Opp'n 2.

That refund does not establish that Lawhorn's belief that Patterson had violated § 18.2-178(A)

was unreasonable when she swore out the criminal complaints. Accordingly, Lawhorn possessed

adequate information to support probable cause when she brought the felony charges against

Patterson for obtaining money through false pretenses; therefore, the evidence is insufficient to

support Patterson's malicious prosecution claim in Counts IX and XI.

Counts XIII, XV, XVII, XIX, XXI, XXIII, and XXV allege seven counts of malicious

prosecution based on the misdemeanor complaints for violations of Va. Code Ann. § 58.1-1815,

which provides in pertinent part:

19

any [] person required to collect, account for and pay over any sales, use or withholding tax, who willfully fails to collect or truthfully account for and pay over such tax, and any such officer or person who willfully evades or attempts to evade any such tax or the payment thereof, shall, in addition to any other penalties provided by law, be guilty of a Class 1 misdemeanor.

Va. Code Ann. § 58.1-1815. The misdemeanor complaints were based on Lawhorn's findings

that FBCS "stopped reporting and/or remitting employee [withholding] taxes beginning in the

[third quarter of] 2007 through the present" even though it continued "to employ staff and

operate as normal." Def.'s Ex. 41, at 3. In addition, according to Lawhorn's prosecution package,

Hawse had met with a tax attorney retained by Patterson who told him that "Patterson would be

taking full responsibility for the outstanding [withholding] taxes owed by FBCS." Id. According

to the same report, Patterson later confirmed his responsibility in person to Hawse and signed a

letter to that effect. Id.; see Def.'s Ex. 40 (Patterson's letter of responsibility). Indeed, based on

discussions with Patterson, his wife, and church members, Lawhorn found that Patterson

"control[led] the church and all aspects of the day-to-day operation to include decision-making

responsibilities; financial decisions, and personnel decisions." Def.'s Ex. 41, at 4. Finally,

Lawhorn's report highlighted that it was not until October 20, 2011, well after the investigation

began, that Patterson filed the required quarterly withholding form (the VA-5 Form), Def.'s Ex.

39, and it was not until March of 2012 that he began to pay the overdue withholding taxes. Pl.'s

Ex. E; Def.'s Ex. 41. Moreover, all of these payments were only of the principal balance owed—

there is no record of penalties or interest being paid as of June 2012, when Lawhorn presented

the results of her investigation to Arledge. All of these findings, which were supported by several

interviews and review of FBCS' tax records, constituted more than enough evidence to "excite

the belief in [a] reasonable mind" that Patterson, as the responsible party for FBCS, had willfully

failed to account for and remit appropriate withholding taxes.

### 3. Termination of Charges in a Manner Not Unfavorable to Plaintiff

There is a dispute over whether the felony charges were ultimately terminated in a manner not unfavorable to plaintiff. See Andrews v. Ring, 266 Va. 311, 325, 585 S.E.2d 780, 787 (2003) (stating that dismissal of felony charges as a result of a voluntary compromise defeats a suit for malicious prosecution). Although all of the criminal charges were eventually nolle prossed, which constitutes termination in a manner not unfavorable to plaintiff in certain circumstances, Niese, 216 Va. at 703-04, 222 S.E.2d at 801, the felony charges were not nolle prossed until June 19, 2012, after Patterson filed the amended personal income tax returns that, among other penalties, exposed him to $45,743 in federal tax liability. See Def.'s Ex. 11 (2007: $12,129 owed); Def's Ex. 13 (2008: $20,460 owed); Def.'s Ex. 15 (2009: $6,246 owed); Def.'s Ex. 17 (2010: $6,908 owed). Defendant contends that the felony charges were dismissed due to a voluntary compromise, whereas plaintiff asserts that they were dismissed because prosecutors determined they did not have sufficient evidence to prosecute. Def.'s Mem. 6; Pl.'s Opp'n 6. This dispute is irrelevant, as it is clear that plaintiff had to acknowledge that he had filed inaccurate returns before any of the felony charges were dropped. Therefore, with regard to the felony charges, plaintiff fails to show that they were resolved in a manner "not unfavorable to the plaintiff." Accordingly, summary judgment will be granted as to all malicious prosecution counts because plaintiff has failed to produce evidence of malice and of a lack of probable cause, and because the felony charges were not resolved in a manner "not unfavorable to the plaintiff."

### D. Sufficiency of the Evidence with Regard to § 1983 Claims

To make out a claim under § 1983, Patterson must show that Lawhorn, "acting under color of law, violated [Patterson's Fourth Amendment rights], and thereby caused the complained of injury." Brown v. Mitchell, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004). The Fourth

Amendment, made applicable to the States by the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a safeguard of this guarantee, it proclaims that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation." Id. Arrests that are supported by probable cause always meet the requirement of reasonableness. Virginia v. Moore, 553 U.S. 164, 171 (2008).

There is no dispute that Patterson's arrests qualified as a "seizure" in constitutional terms, which leaves only the question of whether the arrests were supported by probable cause and therefore reasonable. As the Fourth Circuit has explained,

> [f]or probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required. Two factors govern the determination of probable cause in any situation: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.

Brown v. Gilmore, 278 F.3d 362, 367-68 (4th Cir. 2002) (internal citations and quotation marks omitted).

As an initial matter, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith."[11] Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) (internal quotation marks omitted). The presumption of reasonableness exists because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." United States v. Leon, 468 U.S. 897, 921 (1984).

---

[11] Neither party has challenged the way in which either magistrate carried out his function; accordingly, it is assumed that both judicial officers were neutral and detached.

Finally, even

> where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an officer. If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty. The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.

Malley v. Briggs, 475 U.S. 335, 346 n.9 (1986). Lawhorn could only be liable if "a reasonably well-trained officer in [Lawhorn's] position would have known that [the information she presented to the magistrate] failed to establish probable cause and that [she] should not have applied for the warrant." Id. at 345. Lawhorn will not be "immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. at 341.

Under these standards, Patterson must present sufficient evidence to establish that Lawhorn

> acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. With respect to omissions, reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts [she] knew would negate probable cause. A plaintiff's allegations of negligence or innocent mistake by a police officer will not provide a basis for a constitutional violation.

Miller v. Prince George's Cty., MD, 475 F.3d 621, 627-28 (4th Cir. 2007) (internal citations and quotation marks omitted) (alteration and emphasis in original).

Patterson must also demonstrate the materiality of the statement or omission Lawhorn made to the magistrate, as "[i]t is well-established that a false or misleading statement [or an

23

omission] in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is 'necessary to the finding of probable cause.'" Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1994) (quoting Franks v. Delaware, 438 U.S. 154, 156 (1978)). This analysis requires a court to "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause. If the corrected warrant affidavit establishes probable cause, no civil liability lies against the officer." Miller, 475 F.3d at 627-28 (internal citations and quotation marks omitted).

Despite plaintiff's assertions to the contrary, Pl.'s Opp'n 21, "[i]n this circuit, the failure to include information within the four corners of the affidavit is not necessarily fatal, provided the information is actually presented to the magistrate—a magistrate may consider sworn, unrecorded oral testimony in making probable cause determinations during warrant proceedings." Owens ex rel. Owens v. Lott, 372 F.3d 267, 278 (4th Cir. 2004) (internal quotation marks omitted).[12] As discussed supra, plaintiff makes much of what he characterizes as inconsistencies in defendant's description of how she obtained the felony and misdemeanor

---

[12] Nevertheless, if this were a criminal prosecution, plaintiff would likely win a motion to suppress his arrest on the felony and misdemeanor charges because the complaints did not include a written description of the facts supporting probable cause. Instead, both the felony and misdemeanor complaints merely recited the elements of the offense. For example, on the felony complaint for tax year 2008, Lawhorn stated that her belief that Patterson committed the offense is based "on the following facts:"

Leslie Patterson Jr. did willfully and feloniously file a false income tax return to the Commonwealth of Virginia with the intent to avoid taxation for the taxable year 2008 in violation of § 58.1-348 of the Code of Virginia, as amended.

Second Am. Compl., Ex. 2, at 4. No other information is contained in the complaint; however, that defect does not establish a constitutional violation because the unrebutted testimony in the record establishes that Lawhorn presented additional information in the form of her prosecution reports to the magistrates in both instances to support the complaints and answered the magistrates' questions.

warrants. In an interrogatory answer describing how she obtained the misdemeanor warrants,

Lawhorn explained that the magistrate placed her "under oath and questioned [her] on the

misdemeanor case and the evidence" and that she "walked him through the prosecution report for

the misdemeanor warrants, explained the background on [Patterson's] felony cases in Loudoun

and Prince William Counties, and showed him the payment history and outstanding balance at

the time." Pl.'s Ex. H, at 5. Her sworn testimony during her deposition confirms that she

presented the findings of her investigation to the magistrate to obtain the misdemeanor warrants.

Lawhorn Dep. 111:16-21.

 In contrast, in her interrogatory answer describing how she obtained the felony warrants,

Lawhorn omitted that she was placed under oath by the magistrate and did not describe the

materials she presented to that magistrate in support of the felony complaints. Pl.'s Ex. H, at 5

("Magistrate Talbot confirmed that Arledge supported my case findings and issued the felony

warrants. I answered all questions and did not conceal or misrepresent facts. Neither did I place

any undue pressure upon the Magistrate."). She later clarified that she was in fact sworn by the

magistrate and did present him with the prosecution package. Lawhorn Decl. ¶¶ 11-12

("Magistrate Talbot swore me in under oath and questioned me on the felony case and the

evidence, which included the prosecution report. . . . I answered all Magistrate Talbot's questions

and did not conceal or misrepresent facts. I did not place any undue pressure upon the

magistrate."). That clarification does not contradict any of her deposition testimony or discovery

responses; it simply clarifies them. Moreover, Lawhorn's representation that she was, in fact,

sworn in by the magistrate is corroborated by the statement on each of the criminal complaints

that it was made "[u]nder penalty of perjury" and that she "sw[o]re or affirm[ed] that [she] ha[d]

reason to believe that the Accused committed a criminal offense[,]" and that "[t]he statements

25

[made therein] [were] true and accurate to the best of [her] knowledge and belief." Second Am.
Compl., Exs. 1-6, at 4.

"It is presumed that a probable cause determination by a neutral and detached
magistrate—as was made in this case—renders a pretrial seizure reasonable," Villeda v. Prince
George's Cty., MD, 219 F. Supp. 2d 696, 701 (D. Md. 2002); accordingly, because plaintiff
"ha[s] proffered no evidence to rebut [Lawhorn's] sworn statement[s], . . .[the Court] refuse[s] to
permit mere conjecture to upset the normal presumptions surrounding a warrant's validity."
Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991).[13]

Lastly, Patterson cannot establish his Fourth Amendment claims unless he shows that
Lawhorn's alleged wrongful acts were a proximate cause of his allegedly unlawful arrest. White
v. Wright, 150 F. App'x 193, 197 (4th Cir. 2005). "[C]onstitutional torts, like their common law
brethren, require a demonstration of both but-for and proximate causation. Accordingly,
subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may
constitute intervening superseding causes that break the causal chain between a defendant-
officer's misconduct and a plaintiff's unlawful seizure." Evans v. Chalmers, 703 F.3d 636, 647
(4th Cir. 2012). Because multiple intervening acts broke the causal chain between Lawhorn
swearing out both sets of criminal complaints and Patterson being seized, Lawhorn is insulated
from liability. Id.

This conclusion is supported by Fourth Circuit precedent, including Evans v. Chalmers,

---

[13] Unlike the malicious prosecution analysis, in which probable cause is evaluated from the
perspective of the defendant, see Freezer v. Miller, 163 Va. 180, 202, 176 S.E. 159, 167 (1934),
the constitutional analysis of whether a warrant was adequately supported by probable cause is
considered from the perspective of the issuing magistrate and in light of the materials presented
to that judicial officer when the probable cause determination was made. See Robinson v. S.W.
Miller, No. 2:14-CV-00330, 2015 WL 5298965, at *11 n.6 (S.D.W. Va. Sept. 10, 2015).

703 F.3d at 647, in which the court reversed the denial of the defendant police officers' motion to dismiss the § 1983 malicious prosecution claims brought against them by a university lacrosse team, which alleged that the officers and other officials mishandled false rape charges made against them. 703 F.3d at 649. The court reasoned that because there was no evidence that the officers had lied to or misled the prosecutor, who possessed all discretionary authority to seek an indictment, the independent act of the prosecutor in seeking indictment insulated the officers from liability. Id. Just as the chain of causation between the actions of the officers and the ultimate alleged constitutional violation was broken in Evans by the "intervening acts of other participants in the criminal justice system," id. at 648 (quoting Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000)), so too was the chain of causation between Lawhorn swearing out the criminal complaints and Patterson being arrested on them.

Even if the neutral and detached magistrates failed to require a more detailed written statement of the facts in the complaints supporting the warrants, there is no basis in this record upon which to conclude that either magistrate issued the warrants on less than probable cause. See Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (mentioning the "presumption that state courts know and follow the law"). Accordingly, because there is no affirmative evidence that Lawhorn omitted, concealed, or misrepresented material facts when she appeared before the magistrates, the magistrates are presumed to have found probable cause, thereby severing the chain of causation leading to Patterson's arrests.

The record also provides strong evidence that Arledge reviewed the same evidence that Lawhorn presented to the magistrates and that based on his review of the evidence, Arledge authorized Lawhorn to apply for the warrants. See, e.g., Lawhorn Dep. 10:22-24 ("I had [the felony warrants] reviewed by the Commonwealth's attorney before I ever went to the

magistrate."). As Lawhorn testified during her deposition and as Arledge's signature on each of the felony complaints confirms, "[the felony warrants] were [issued] under the request of John Arledge. [Lawhorn] was not a sworn officer. [She] could not swear out warrants on [her] own behalf." Id. 18:25-19:2. Likewise, as to the misdemeanor warrants, Lawhorn testified that "after preparing [her] charges, [her] case, [she] met with John Arledge, who authorized [her] to go before the magistrate to go get warrants for Patterson's failure to withhold and file withholding taxes." Id. 23:11-15. As such, Arledge's directions in both instances to pursue criminal charges after reviewing the results of Lawhorn's investigations also severed the causal chain leading to both of Patterson's arrests.

Lastly, Officer Javid, the officer executing the misdemeanor warrants, was vested with total discretion to decide whether to physically arrest Patterson or summons him to appear, and he chose to arrest Patterson. Second Am. Compl., Exs. 7-13, at 2 (stating that execution by summons is permitted at officer's discretion). There is simply no evidence in the record beyond Patterson's bare conjecture that Lawhorn influenced Javid's decision to arrest Patterson. That explicit exercise of discretion further breaks the causal chain with regard to the misdemeanor warrants. For these reasons, Patterson's evidence is insufficient to demonstrate the requisite elements of but-for and proximate causation to make out an unconstitutional seizure claim under § 1983. Accordingly, summary judgment will be granted in favor of defendant on these counts.

### III.   CONCLUSION

For the reasons stated above, defendant's Motion for Summary Judgment [Dkt. No. 82] will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 20 day of July, 2016.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

28